Newell E. Cumming, Esq.  (SBN 89275)
LAW OFFICES OF NEWELL E. CUMMING
145 South Fig Street, Suite L
Escondido, CA 92025
Tel:  760-747-6600
Fax:  760-747-6644

FILED

2010 DEC 23  PM 3: 06

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

Attorney for Plaintiffs Steven and Suzanne Rogers-Dial, and Automotive Specialists, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

STEVEN ROGERS-DIAL, an individual;
SUZANNE ROGERS-DIAL, an individual,
and AUTOMOTIVE SPECIALISTS, LLC,
a California limited liability company;

        Plaintiffs

    vs.

RINCON BAND OF LUISENO INDIANS;
and DOES 1-25;

        Defendants

'10 CV 2656        W    RBB

Case No.

**COMPLAINT FOR**

1) **DECLARATORY RELIEF**
2) **PRELIMINARY AND PERMANENT**
    **INJUNCTION**

COME NOW Plaintiffs, STEVEN ROGERS-DIAL, an individual; SUZANNE ROGERS-DIAL, an individual; and AUTOMOTIVE SPECIALISTS, LLC, a California limited liability company;  and complain and allege as follows:

## I.   JURISDICTION

1.    This U.S. District Court has original federal question jurisdiction based upon

1

28 U.S.C. §1331.   In addition, this Court has jurisdiction pursuant to 28 U.S.C. §1343 (3) and (4) as conferred upon the Court in lawsuits authorized by 42 U.S.C. §1983 and §1985, and by virtue of 28 U.S.C. §§ 2201(a), 2202, and F.R.C.P. 57, which provides for jurisdiction based upon an action for declaratory judgment.

## II.   VENUE

2.      Plaintiffs refer to and re-allege each and every allegation contained in Paragraph 1. above, and by this reference incorporate, as though fully set forth herein, said Paragraph.

3.      Venue is proper in this District in that the Plaintiffs are citizens of the United States and have their respective  residences and businesses within San Diego County, California and within this District.   In addition, all defendants reside within this County, and/or engaged in their wrongful actions within this County and within this District.

## III.   THE PARTIES

4.      Plaintiffs refer to and re-allege each and every allegation contained in Paragraphs 1. through 3, above, and by this reference incorporate, as though fully set forth herein, said Paragraphs.

5.      At all times relevant herein, Plaintiffs STEVEN ROGERS-DIAL and SUZANNE ROGERS-DIAL, husband and wife, (collectively "ROGERS-DIAL"), were and are individuals residing in Valley Center, California, within the County of San Diego, and within this judicial district.      ROGERS-DIAL reside in their home on non-tribal-owned land, located at 33777 Valley Center Road, Valley Center, California 92082 (collectively "Property"), within the County of San Diego, and within this judicial district.      ROGERS-DIAL also maintain and operate a

2

COMPLAINT BY PLAINTIFFS ROGERS-DIAL AND AUTOMOTIVE SPECIALISTS, LLC   - Case No

business on this Property, known as S & S Dump Truck Service, Inc.

6.   At all times relevant herein, Plaintiff AUTOMOTIVE SPECIALISTS, LLC ("AUTOMOTIVE SPECIALISTS") was, and is, a California limited liability company doing business in Valley Center, California, within the County of San Diego, and within this judicial district.   AUTOMOTIVE SPECIALISTS has been doing business, on non-tribal-owned land, located at 33777 Valley Center Road, Valley Center, California 92082 (collectively "Property"), within the County of San Diego, and within this judicial district.

7.   At all times relevant herein, on information and belief, Defendant RINCON BAND OF LUISENO INDIANS ("RINCON" or "Defendant") is a "sovereign nation" recognized as such by the United States Congress and under other applicable federal legislative and adjudicative law, and is located within the County of San Diego, and within this judicial district.

8.   Plaintiffs are each tenants residing in and/or doing business on the Property, as described above, pursuant to rental agreements with Marvin Donius ("Donius"), the Plaintiffs' landlord, who is, on information and belief, the owner in fee-simple of the Property.   Donius is not a party in this action, and the acts complained of herein are not those of Donius.   Reference is made to Donius herein because he is the Plaintiffs' landlord.

9.   Plaintiffs are unaware of the true names and capacities whether individual, corporate, associate or otherwise of Defendants DOES 1 through 25, inclusive, and therefore sues said Defendants by such fictitious names.   Plaintiffs are informed and believe, and upon such information and belief allege, that each of said Defendants is/are responsible in some manner for the events and happenings herein referred to, and proximately caused the damages to Plaintiffs, as

---

3

described herein.   Whenever in this Complaint any Defendants are the subject of any charging allegation, it shall be deemed that said Defendants, DOES 1 through 25, inclusive, and each of them, are likewise a subject of said charging allegations.

10.   Plaintiffs are informed and believe, and upon such information and belief allege that at all times herein mentioned, each of the Defendants was the agent, servant and/or employee of the remaining Defendants, and, at all times herein mentioned, was acting within the course and scope of said agency and/or employment.

## IV.   STATEMENT OF FACTS

11.   Plaintiffs refer to and re-allege each and every allegation contained in Paragraphs 1. through 10. above, and by this reference incorporate, as though fully set forth herein, said Paragraphs.

12.   The dispute underlying this Complaint relates to the lawful enjoyment and use of the Property by Plaintiffs, as leasehold tenants.   The Declaratory and Injunctive Relief sought herein is urgent, and of vital importance to the Plaintiffs, as explained below.   If the injunctive relief is not granted, and the Defendants are not stopped from undertaking their unlawful activities, the Plaintiffs will be forced from their home, and businesses, respectively.

13.   On information and belief, RINCON has been engaged in a systematic effort to acquire the Property, which is owned by Donius, a non-Indian   (hereinafter "Non-Tribal-owned Land" or "Property").   At least some of the land that abuts the Property is owned, on information and belief, by RINCON and/or its Tribal members (hereinafter "Tribal Land").   The history leading up to the present dispute, which has now reached a critical point, is summarized

---

4

below.

14.     In 1960, the Property was "allotted and conveyed out of Tribal ownership" by a Bureau of Indian Affairs fee patent.     In 1982, an entity known as "Rincon Mushroom Corporation of America" ("Rincon Mushroom"), a non-Indian-owned business, purchased from a non-Indian five (5) acres of this land (i.e., the Property), which, on information and belief, abuts real property owned by RINCON.   Since at least 1960, the Property has been, and still remains, non-Indian-owned land.

15.     Rincon Mushroom continued to own the Property in fee simple until 1999, when it sold the Property to Donius, also a non-Indian.   Subsequent to the purchase by Donius, the Property was used as a "non-tribal mixed-use commercial facility," and included leases in subsections of the Property with various tenants, including the Plaintiffs.     As referenced above, the ROGERS-DIAL family continues to live as tenants on the Property in a manufactured-home, and operate their business, S & S Dump Truck Service, Inc. out of this location.     However, RINCON  has placed concrete barriers in front of the ROGERS-DIAL residence to block these Plaintiffs from driving their vehicles in and out of their Property.

16.     Plaintiff AUTOMOTIVE SPECIALISTS is in the towing and impound business, including providing such services to the California Highway Patrol, the San Diego County Sheriff's Department, and the Southern California Automobile Club ("AAA"), and has leased and operated its business on the Property since 2004.   However, as mentioned above, RINCON has placed concrete barriers in front of AUTOMOTIVE SPECIALISTS business to prevent any vehicles, whether being towed or not, from entering this Plaintiff's business.

17.   RINCON has been, and continues to engage in an unlawful effort to force Plaintiffs off the Property, notwithstanding their lawful and binding leases with Donius.   If RINCON is successful in its efforts, the Property will essentially become unmarketable, and subject to a significant lose of value.    To do this, RINCON has acquired the purported jurisdiction of The Intertribal Court of Southern California - Rincon Band of Luiseno Indians ("Tribal Court"), and has caused a Preliminary Injunction ("RINCON Injunction") to be issued by that Tribal Court.

18.   To obtain its Injunction, RINCON filed in Intertribal Court on or about August 27, 2010 an Application for a Temporary Restraining Order and Motion for Issuance of an Order to Show Cause ("OSC") as to Donius and his tenants.   The Intertribal Court conducted a hearing on September 2, 2010 and issued an order that no "additional physical property" could be moved onto the Property.    That court issued its ruling in support of the RINCON Injunction, which is directed towards real property that is not within RINCON'S jurisdiction, and towards individuals who are not Indian, nor subject to Tribal rules or jurisdiction.   .

19.   The RINCON Injunction purportedly enjoined Donius, and therefore the Plaintiffs as his tenants, from 1) bringing any additional physical property onto the subject Property; except for property used to remove other property, and 2) requires that anyone residing on the Property, and who hold themselves out as "having dominion and control over the subject Property, shall effectuate the removal of such persons and their physical property from the Subject Property by October 25, 2010.    The RINCON Injunction further stated that "ingress and Egress shall be allowed for persons representing that they reside on the property until October 25, 2010, provided ingress is limited to food, water and small personal items.   No ingress for such persons shall be

---

1  allowed after October 25, 2010."    A true and correct copy of the RINCON Injunction is attached

2  to and hereby incorporated into this Complaint as Exhibit "A".

3      20.    To acquire its Injunction, RINCON asserted false allegations relating to a claim of

4  a supposed environmental hazard.    As one example of RINCON'S unlawful actions, the Tribe

5  filed a false complaint with the U.S. Environmental Protection Agency ("EPA") alleging that

6  serious and dangerous environmental damage was being caused by the Plaintiffs, as tenants no the

7  Property.    As a result of RINCON'S claim, the EPA investigated the Property in 2008 and

8  determined that there was no environmental harm being caused on the Property by the Plaintiffs or

9  their landlord.

10

11     21.    In addition to the inspection by the EPA, a hydrogeolgist and environmental

12  consultant was hired to inspect the Property and determine whether any such harm has occurred.

13  This expert, John Peterson, completed an extensive site inspection at the Property on May 31,

14  2010.    In his comprehensive Declaration prepared under oath, the expert details his inspection

15  and review of various documents.    In his conclusion, he states that "none of the documents that

16  [he] reviewed showed any evidence of actual or threatened groundwater contamination."    Mr.

17  Peterson concludes by stating that "the examined record is devoid of any evidence evincing or

18  indicating any groundwater contamination, actual or threatened, that could have any deleterious

19  effect upon the Rincon Tribe's drinking water supply or otherwise injure any tribal member on the

20  Rincon Reservation."    A true and correct copy of the Declaration by John Peterson, dated June 7,

21  2010, is attached to and hereby incorporated into this Complaint as Exhibit "B".

22     22.    RINCON has also asserted a claim of environmental harm by contending that

---

7

1  AUTOMOTIVE SPECIALISTS is causing damage by leaking oil from impounded vehicles on

2  AUTOMOTIVE SPECIALISTS' Property.      AUTOMOTIVE SPECIALISTS' business in the

3  RINCON area relates solely to operating a tow truck service and an impound yard to take vehicles

4  impounded by law enforcement.      The vehicles typically remain impounded for short periods of

5  time, before being retrieved by their owners.      Not only are these vehicles usually not "junk yard-

6  type" cars, but they are parked in Plaintiff's facility on concrete.      Even if some drops of oil were

7  to leak from an engine, the oil would remain on the concrete.      In fact, concrete is generally

8  impervious to the movement of liquids through its surface.      If necessary, Plaintiffs are prepared

9  to offer expert testimony confirming that it is not possible for any claimed oil leakage to travel

10  through the concrete and down into any aquifer that may be below.      In other words, there is no

11  basis or merit to the claim that this Plaintiff is causing harm to the underground water supply of

12  the adjoining land.

13  23.      Before asserting that leaking vehicle oil was causing environmental harm,

14  RINCON had had also earlier claimed that an environmental harm existed because of the burned

15  debris that remained after the local fires of October 2007.      After the fires, the debris was

16  removed, and the damage caused by those fires on the Property has been repaired and/or cleaned

17  up.

18  24.      The reason RINCON continues to assert its claims of environmental harm is to

19  attempt to acquire jurisdiction over the subject Non-Tribal-Owned Land by relying upon an

20  exception to the lack of Tribal authority over Non-Tribal-Owned Land that was stated by the U.S.

21  Supreme Court in <u>Montana v. United States</u> (450 U.S. 544 (1981).  In that seminal case, the high

Court held that an Indian Tribe had no authority to regulate hunting and fishing by non-Indians on non-Indian-owned fee land, notwithstanding the fact that the land was within the reservation.   Of the two exceptions to the limit on a tribe's sovereign powers over Non-Tribal-Owned-Land, RINCON contends that it may exercise jurisdiction pursuant to the second exception (known as Montana's "second exception," which provides that a tribe could exercise "civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." The Supreme Court also stated that the two exceptions in Montana should be read narrowly. Instead, RINCON is attempting to utilize false claims of environmental harm to support its efforts to assert jurisdiction over the Property.

25.    As another example of RINCON'S unlawful conduct, during the summer of 2009 individuals from RINCON used a chain saw to cut down the main business sign, about 10' x 10' in size, which was on the Property.    RINCON individuals also took down and removed the business sign of AUTOMOTIVE SPECIALISTS, which was located on AUTOMOTIVE SPECIALISTS' leased Property.    Robert Moreno, owner of AUTOMOTIVE SPECIALISTS, witnessed these actions by RINCON as they occurred.    A report of the incident was filed with the San Diego County Sheriff's Department at their Valley Center Substation.

26.    It is widely believed by various individuals that that RINCON would like to own Donius' Property, probably for purposes related to nearby Harrah's Casino.    Donius and Plaintiffs are aware of a series of acts undertaken by RINCON to intimidate and harass these individuals, all for the purpose of forcing Donius, and his lawful tenants, to be off the Property

9

permanently.      Although it is not known how Plaintiffs will react if RINCON interferes with Plaintiffs' residence and businesses, it is cause for serious concern.      Needless to say, the emotions and anger on the part of Plaintiffs have recently increased significantly, and have now reached a critical point as RINCON attempts to assert its specious claim of authority over Donius and Plaintiffs, and tries to force Plaintiffs from the Property.

27.      On or about March 22, 2010, Donius filed a complaint in federal court (Donius v. Bo Mazzetti, et al., Case No. 10cv591-WQH-POR) for Injunctive and Declaratory Relief against certain individuals in their official capacities as members and/or representatives of the RINCON BAND (hereinafter the "Donius Action").      Similar to the present Complaint, that action involved issues relating to tribal regulation of non-Indian fee simple land located within the boundaries of the RINCON reservation.      In ruling upon a Motion to Dismiss filed by RINCON, Judge Hayes of this judicial district dismissed Donius' complaint against those individuals based upon the failure of Donius to exhaust all tribal remedies in that action.      However, in the present action, the Plaintiffs have not been parties in any previous judicial action relating to the dispute, including the Donius Action and the RINCON Tribal Court's issuance of its Preliminary Injunction.

28.      After RINCON obtained its Injunction, the Defendants erected concrete barriers, which were chained together, which effectively blocked the Plaintiffs from entering or leaving their Property in their vehicles, including their residence and respective places of business. These concrete barriers presently remain in place.      On September 29, 2010, Robert Moreno, the owner of AUTOMOTIVE SPECIALISTS sent a letter to the attorney for Donius, complaining that

---

COMPLAINT BY PLAINTIFFS ROGERS-DIAL AND AUTOMOTIVE SPECIALISTS, LLC   - Case No

1   RINCON'S actions will force this Plaintiff to go out of business.   A true and correct copy of this

2   letter is attached to and hereby incorporated into this Complaint as Exhibit "C".

3        29.   As one would expect, since RINCON erected its concrete barriers, the tensions and

4   anxiety felt by the Plaintiffs have increased.   Steven and Suzanne Rogers-Dial have remained in

5   their home, but are not allowed to drive their vehicles up to their residence.   When a third-party

6   was attempting to enter the Property to remove a vehicle that was being stored there, Steven

7   Rogers-Dial helped this individual by opening a gate that belonged to AUTOMOTIVE

8   SPECIALISTS.   As soon as he did so, someone apparently called the tribal police, who

9   responded along with Deputies from the San Diego County Sheriff's Department.   On

10   information and belief, apparently words were exchanged between Steven Rogers-Dial and law

11   enforcement officers, resulting in this Plaintiff being arrested and taken to the Valley Center

12   Sheriff's Substation.   Steven Rogers-Dial was issued a misdemeanor citation (P.C. 148(a)) for

13   "delay/resisting [a] peace officer," and released a short time later.   A true and correct copy of

14   the misdemeanor citation is attached to and hereby incorporated into this Complaint as Exhibit

15   "D".

16        30.   As another example of RINCON'S unlawful attempt to exert regulatory authority

17   over Plaintiffs, on or about October 30, 2010, RINCON Tribal Police issued a "Civil Citation"

18   ("Citation") to ROGERS-DIAL with regard to a banner those Plaintiffs have placed on their

19   Property.   The banner references the dispute between the Plaintiffs and RINCON, and includes a

20   website that provides additional information about this matter.   The Citation states that the

21   Plaintiffs have "posted [an] illegal sign" on the Property, in violation of the Tribe's "Peace and

---

11

Security Code Section 16.0, Sign Ordinance Part A".    After the undersigned counsel for the Plaintiffs requested a copy of the subject ordinance, RINCON withdrew the Citation.    A true and correct copy of the RINCON Citation is attached to and hereby incorporated into this Complaint as Exhibit "E".

31.    Underlying Plaintiffs' contentions is the fact that by attempting to assert jurisdiction over these non-Indians who occupy Non-Tribal-owned Land, RINCON is engaged in conduct that is in violation of federal law, including the civil rights protections that Plaintiffs are entitled to under 42 U.S.C. §§ 1983 and 1985.    Among the examples of Defendants' violations of law are the attempt to assert jurisdiction under the second <u>Montana</u> exception by falsely claiming harm to the Tribe because of claimed environmental hazards, as well as the attempt to deprive Plaintiffs of their civil rights by falsely claiming sovereign authority over the subject Non-Tribal-owned Land.

32.    The relief sought by the Plaintiffs in this Complaint is urgent.    If RINCON is not restrained from continuing its unlawful activities, the ROGERS-DIAL family will be forced out of them home and business, and the vehicle impound business of AUTOMOTIVE SPECIALISTS will not survive.    This harm will result, even though the Plaintiffs are lawful tenants on the Property.

33.    RINCON intends to enforce its Preliminary Injunction issued by Intertribal Court of Southern California against Donius.    At the tenants of Donius, the Plaintiffs are directly affected by the threatened actions by Defendants.    The urgency of this request for Declaratory and Injunctive Relief is apparent.    RINCON is determined to cause Plaintiffs to leave the Property, by whatever means.    By continuing to try to force the Plaintiffs to abandon their leasehold

COMPLAINT BY PLAINTIFFS ROGERS-DIAL AND AUTOMOTIVE SPECIALISTS, LLC   - Case No

interests, this dispute is likely to escalate and become more dangerous.

34.    On information and belief, Defendants do not dispute the facts that the subject Property is owned by Donius in Fee Simple, and that neither RINCON nor any of its members are lawful owners of the subject Property.   Notwithstanding these facts (or perhaps because of them) RINCON is now attempting to assert physical control over the Plaintiffs and their Leasehold interests in the Property by engaging in the wrongful actions described above.

## V.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (Declaratory Relief Against All Defendants)

35.    Plaintiffs refer to and re-allege each and every allegation contained in Paragraphs 1. through 34. above, and by this reference incorporate, as though fully set forth herein, said Paragraphs.

36.    On or about August 27, 2010, RINCON filed in InterTribal Court an Application for a Temporary Restraining Order and Motion for Issuance of an Order to Show Cause ("OSC") as to Donius and his tenants.    The Tribal Court conducted a hearing on September 2, 2010 and issued an order that no "additional physical property" could be moved onto the Property.    The Tribal Court issued its ruling in support of the RINCON Injunction, which is directed towards real property that is not within RINCON'S jurisdiction, and towards individuals who are not Indian, nor subject to Tribal rules or jurisdiction.    .

37.    The RINCON Injunction purportedly enjoined Donius, and therefore the Plaintiffs as his tenants, from 1) bringing any additional physical property onto the subject Property; except

for property used to remove other property, and 2) requires that anyone residing on the Property, and who hold themselves out as "having dominion and control over the subject Property, shall effectuate the removal of such persons and their physical property from the Subject Property by October 25, 2010.    The RINCON Injunction further stated that "ingress and Egress shall be allowed for persons representing that they reside on the property until October 25, 2010, provided ingress is limited to food, water and small personal items.    No ingress for such persons shall be allowed after October 25, 2010."

38.    Plaintiffs assert that the Defendants do not have regulatory or adjudicative authority as to either these non-Indian Plaintiffs or as to the fee simple land upon which they are tenants.

39.    An actual controversy exists between Plaintiffs and Defendants relating to the intentions of the Defendants to force Plaintiffs from their leasehold interests in the subject Non-Indian-Owned Land.    Specifically, Plaintiffs dispute the effort by RINCON to regulate the subject fee-simple land, which is owned by a non-Indian.    To do this, RINCON has acquired the purported jurisdiction of The Intertribal Court of Southern California - Rincon Band of Luiseno Indians, and has caused an injunction (i.e., "RINCON Injunction") to be issued by that InterTribal Court.    However, the RINCON Injunction is directed towards real property that is not within RINCON'S jurisdiction, and toward individuals who are not Indian, nor subject to Tribal rules or jurisdiction.

40.    The controversy concerns the Plaintiffs' rights with respect to their respective leasehold interests on the Property.    Specifically, Plaintiffs contend that any prospective or future actual or attempted enforcement against Plaintiffs by Defendants should be found, declared

---

COMPLAINT BY PLAINTIFFS ROGERS-DIAL AND AUTOMOTIVE SPECIALISTS, LLC   - Case No

and adjudged facially unconstitutional, unconstitutional as applied, and/or illegal pursuant to applicable provisions of federal and California law.    Such provisions requiring this judicial determination to be made include, but are not limited to, the Supremacy Clause of the U.S. Constitution (Art. VI, Clause 2), the Taking, Due Process, and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the Constitution, cognate provisions of the California State Constitution, and federal civil rights protections afforded by 42 U.S.C. §§ 193 and 1985 (3).

41.    Plaintiffs further contend that any prospective or future actual or attempted enforcement or other actions by RINCON or its representatives with regard to the RINCON Injunction would so clearly exceed and go beyond any authority that can legally or constitutionally be conferred upon RINCON as to be *ultra vires* as to such actions by RINCON.

42.    Defendants dispute and deny Plaintiffs' contentions.

43.    By reason of the matters asserted herein, Plaintiffs desire a judicial determination of their rights, duties and obligations, and a declaration that the Defendants may not enforce the Injunction as to these Plaintiffs.

44.    Plaintiffs have no other adequate or speedy remedy.

## SECOND CAUSE OF ACTION

### (Preliminary and Injunction Relief Against All Defendants)

45.    Plaintiffs refer to and re-allege each and every allegation contained in Paragraphs 1. through 44. above, and by this reference incorporate, as though fully set forth herein, said Paragraphs.

46.    As stated above, Plaintiffs contend that any prospective or future actual or

---

15

attempted enforcement against Plaintiffs by Defendants should be found, declared and adjudged facially unconstitutional, unconstitutional as applied, and/or illegal pursuant to applicable provisions of federal and California law.    Such provisions requiring this judicial determination to be made include, but are not limited to, the Supremacy Clause of the U.S. Constitution (Art. VI, Clause 2), the Taking, Due Process, and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the Constitution, cognate provisions of the California State Constitution, and federal civil rights protections afforded by 42 U.S.C. §§ 193 and 1985 (3).

47.    Plaintiffs further contend that the Defendants do not presently have, nor will they in the future have, as a matter of law, any regulatory or adjudicatory authority as to these Plaintiffs and their leasehold interests in the Property.    Unless this Court issues a preliminary injunction and/or permanent injunction requiring and ordering RINCON to desist and refrain from any further actual or attempted enforcement, prospectively and in the future, of any and all purported regulatory or adjudicative authority over these Plaintiffs and their leasehold interests, these Plaintiffs will suffer serious and irreparable injury and other damages that are not compensable in money damages or by monetary relief of any nature.

48.    The immediate injuries to be sustained by the Plaintiffs should the Court not enjoin RINCON from its actions include the loss of the ROGERS-DIAL home and their business, as well as the destruction of AUTOMOTIVE SPECIALISTS' business being operated on the Property. This latter Plaintiff has already been advised by the California Highway Patrol and the San Diego County Sheriff's Department that the towing and impound agreements between AUTOMOTIVE SPECIALISTS and these law enforcement agencies will be terminated.

49.     By this Complaint, Plaintiffs request that the Court issue a Preliminary Injunction barring the Defendants from enforcing the terms of the RINCON Injunction as to these Plaintiffs. Specifically, Plaintiffs contend herein that any prospective or future actual or attempted enforcement

50.     Plaintiffs have no other adequate or speedy remedy.

51.     The urgency of the need for injunctive relief is apparent.   If Defendants intend to enforce the terms of their Injunction, and continue to try to force the Plaintiffs from entering their Property, including the residence of ROGERS-DIAL, and AUTOMOTIVE SPECIALISTS' business operation, the risk of an escalation of this dispute is great and very real.

## VI.   CONCLUSION

52.     Plaintiffs contend that Defendants do not have regulatory or adjudicative authority as to either these non-Indian Plaintiffs, or as to their non-Indian leaseholds interests and the fee simple land upon which they are tenants.   Plaintiffs further contend that the Defendants do not have the authority to subject the Plaintiffs to the jurisdiction of the Intertribal Court, or to force Plaintiffs to abandon their lawful leasehold interests in the Property.

53.     It is essential that the status quo and semblance of peace be maintained, as an interim measure, in the interim before this Court has the opportunity to hear testimony and other evidence to be presented in a noticed hearing by all parties.      For this reason, the Court is respectfully requested to issue a preliminary injunction to temporarily prevent further damages and harm to the Plaintiffs.

///

## PRAYER FOR RELIEF

WHEREFORE, for each and every Cause of Action stated herein, and for this Complaint in its entirety, Plaintiffs pray for the following:

### FIRST CAUSE OF ACTION

1.      That the Court issue a declaration of the rights and duties of the parties; specifically whether Defendants may exercise Tribal authority over the Plaintiffs, including the ingress and egress on Plaintiffs' Property, which is secured by the Plaintiffs' rental agreements with the owner of the Property, Marvin Donius.

2.      That the Court further issue a declaration that the Defendants are not constitutionally or legally entitled to exercise regulatory or adjudicative authority or jurisdiction.

### SECOND CAUSE OF ACTION

3.      That the Court issue a Preliminary and/or Permanent Injunction enjoining the RINCON BAND OF LUISENO INDIANS, their agents, attorneys, successors, and representatives and all persons acting in concert or participating with them, from;

a)      Entering the Plaintiff's Property;

b)      Taking any further steps to bar the ingress and egress by Plaintiffs on their Property, and/or

c)      Tying to force the Plaintiffs to abandon their Property, including their leasehold interests.

### AS TO ALL CAUSES OF ACTION

4.      That Plaintiffs recover reasonable attorney fees and costs incurred in this action, and that the Court award all other appropriate relief.

5.     That the Court retain jurisdiction and maintain the status quo pending the issuance of a final order from this Court regarding the relief sought in this Complaint.

6.     For any other equitable, legal, and/or monetary relief that the Court may deem proper under the circumstances.

Respectfully submitted,

DATED: December 22, 2010          LAW OFFICES OF NEWELL E. CUMMING

By:   _____
Newell E. Cumming, Esq.
Attorney for Plaintiffs Steven and Suzanne Rogers-Dial
and Automotive Specialists, LLC

**EXHIBIT "A"**



THE INTERTRIBAL COURT OF SOUTHERN CALIFORNIA
RINCON BAND OF LUISENO INDIANS

CERTIFIED

CLERK OF THE COURT: CS

DATE 9-10 P 02:14 RC 10

INTERTRIBAL COURT OF SOUTHERN CALIFORNIA
49002 GOLSH ROAD
VALLEY CENTER, CA 92002

| | |
|---|---|
| RINCON BAND OF LUISENO INDIANS, | Case No. RINCON-02972009 |
| Plaintiff, | PRELIMINARY INJUNCTION |
| v. | |
| MARVIN DONIUS, and MUSHROOM EXPRESS, INC., a California Corporation, and RINCON MUSHROOM CORPORATION OF AMERICA, INC., a California Corporation, | |
| Defendants. | |

THIS MATTER came before the Court on the Plaintiff's Application for a Temporary Restraining Order and Motion for Issuance of an Order to Show Cause why Defendants Should not be Held in Civil Contempt, filed on Friday August 27, 2010. A hearing on the Application and Motion was conducted on Thursday, September 2, 2010. Present at the hearing were Scott Crowell and Scott Wheat, attorneys for Plaintiff and, George McGill, attorney for Defendants.

At the conclusion of the September 2, 2010 hearing, the Court ordered Defendants not to move any additional physical property onto the Subject Property, and to present the Court with an agreed order consistent with those terms by Friday, September 8, 2010. The Court did receive

1   a proposed order from Plaintiffs on Friday, September 8, 2010, but that proposed order was not

2   agreed to by Defendants.

3       Plaintiffs then re-noted their Motion for hearing on Tuesday, September 21, 2010 at

4   which the following were present: Scott Crowell and Scott Wheat, attorneys for Plaintiff and,

5   George McGill, attorney for Defendants.  At the September 21, 2010 hearing, the Court

6   entertained extensive additional argument from the parties on the Plaintiff's Motion.  The Court

7   has also received voluminous exhibits in support of the Plaintiff's Motion which included the

8   record of proceedings in the following state and federal court causes of action: *Rincon*

9   *Mushroom Corporation of America v. Mazzetti et. al,* D.C. S.C. Cause No. 09 CV 2330 WQH

10  POR; *Donius v. Mazzetti et. al,* US D.C. S.C. Cause No. 10-CV-0591-WQH-POR; *Rincon*

11  *Mushroom Corporation of America v. SDG&E,* 37-2008-00101838 CU BT-NC.

12      Upon review of the record and upon consideration of the arguments of counsel, the Court

13  finds and concludes that the Plaintiff has met its burden for issuance of injunctive relief *pendent*

14  *lite* in this cause and the Court hereby issues the following PRELIMINARY INJUNCTION,

15  pursuant to ICSC Code of Civil Procedure Title III § 2.1.2.01

16      1.    Defendants are hereby enjoined from bringing any additional physical property

17  onto the subject property, specifically including automobiles;

18      2.    Defendants may bring equipment onto the Subject Property only for the sole

19  purpose of removing physical property present on the Subject Property as of September 21,

20  2010;

21      3.    If there are any persons residing on the Subject Property, they are doing so in

22  violation of prior orders of this Court.  Defendants, who hold themselves out as having dominion

23  and control over the Subject Property, shall effectuate the removal of such persons and their

24

25

26

PRELIMINARY INJUNCTION

2

physical property from the Subject Property by October 25, 2010. Ingress and egress shall be

allowed for persons representing that they reside on the property until October 25, 2010,

provided ingress is limited to food, water and small personal items. No ingress for such persons

shall be allowed after October 25, 2010.

    4.    Emergency, Security and other governmental and essential public service

providers may access the Subject Property if necessary to perform their duties, consistent with

this ORDER.

    5.    The Rincon Tribal Law Enforcement Department is hereby ORDERED to enter

and remain upon the Subject Property to effectuate restrictions on ingress and egress thereto

consistent with the terms of this Order, and shall do so in a manner that minimizes traffic

disruptions along Valley Center Road. Specifically, Rincon Tribal Law Enforcement Department

is authorized to establish a roadblock within the boundaries of the subject property that allows

sufficient room for vehicles to enter from Valley Center Road and exit on to Valley Center Road.

A log shall be maintained of all vehicles and equipment entering on to the subject property.

Access beyond the roadblock shall be limited subject to the terms of this Order. Copies of this

Order shall be provided to all persons attempting ingress on to the subject property. Questions

should be directed to the Office of the Rincon Attorney General at 760-638-1982.

    6.    This ORDER shall remain in effect until lifted amended or modified by this

Court.

///

///

///

PRELIMINARY INJUNCTION

3

7.     Finally, the Court notes that Defendants have been served with the Compliant in this cause.  The Court encourages Defendants to answer the complaint or to otherwise file a dispositive motion in lieu of a Complaint so this matter may proceed to disposition in accordance with the ITSC Code of Civil Procedure.

DATED this ____ Day of September, 2010

Anthony J. Brandenburg
Chief Tribal Judge of the
Intertribal Court of Southern California

PRELIMINARY INJUNCTION

4

**EXHIBIT "B"**

GEORGE MCGILL        (SB #031973)
1328 Sun Valley Road
Solana Beach, CA   92075-1647

Telephone:   (858) 481-8446
Facsimile:   (858) 481-1346

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARVIN DONIUS, | Case Number:  10 CV 0591 WQH POR |
|          Plaintiff, | DECLARATION OF JOHN PETERSON IN OPPOSITION TO MOTION OF SPECIALLY APPEARING DEFENDANTS TO DISMISS COMPLAINT FOR LACK OF JURISDICTION AND FAILURE TO EXHAUST TRIBAL REMEDIES |
|     vs. |  |
| BO MAZZETTI; STEPHANIE SPENCER; CHARLIE KOLB; DICK WATENPAUGH; STEVE STALLINGS; KENNY KOLB; DOE I AND DOE II, | Judge:      William Q. Hayes<br>Date:       June 21, 2010<br>Time:       11:00 a.m.<br>Courtroom:  4, Fourth Floor |
|          Defendants. | ORAL ARGUMENT REQUESTED |

I, JOHN PETERSON, declare:

A.   **Background.**

1.   I am a hydrogeologist and environmental consultant.  I have personal knowledge of the facts set forth in this declaration, and if called as a witness I could and would testify competently thereto.

10 CV 0591 WQH POR

DEC. OF JOHN PET
TO MOTION TO DIS

2. From 1981 to 2003, I was employed by the County of San Diego ("County") as the County Hydrogeologist with the Department of Planning and Land Use. I also served as the CEQA Regulatory Manager in the later years of my employment with the County.

3. As the County's hydrogeologist, I was responsible for the review of, and approval or denial of, all development projects that relied upon or involved groundwater within the unincorporated area of the County. I was also responsible for ensuring that any project in the unincorporated area of the County that relied upon or used groundwater fully met and satisfied all requirements imposed by the County Groundwater Ordinance.

4. In addition to my duty as the County's hydrogeologist, I also acted as the CEQA Regulatory Manager with responsibility for reviewing projects for environmental compliance. In this position I managed a section of environmental specialists who were assigned the task of preparing and completing CEQA review for all private projects within the County.

B. **Education and Qualifications.**

5. I have a Bachelor of Science from San Diego State University (1976) and a Master's of Science in Geology with a specialty in hydrogeology (1978), also from San Diego State University. I am a California Certified Hydrogeologist (#90) and a California Professional Geologist (#3713).

6. As the owner and principal of Peterson Environmental Services (established in the spring of 2003), I have directed many groundwater investigations and studies. I have also provided expert witness (forensic groundwater) investigations and testimony in numerous litigated cases both in San Diego County and elsewhere in California. I am qual-

2

1  ified to provide expert witness testimony in all state and federal
2  courts in California

3           C.   **Review of Facts of This Case.**

4      7.  For my review of the facts of this case, I have completed the
5  following:

6          (1)  On Monday, May 31, 2010, I completed an extensive site
7  inspection at 33777 Valley Center Road, Valley Center, San Diego County.

8          (2)  I have carefully reviewed each of the following docu-
9  ments:  (a) Letter dated July 27, 2005 from US EPA to Marvin Donius; (b)
10  Letter dated January 18, 2008 from Department of Health and Human Serv-
11  ices to Kristie Orosco; (c) Letter dated September 4, 2008 from US EPA
12  to Craig Benson (83-Page Letter Report, Mushroom Express Assessment);
13  (d) March 31, 2010 Supplemental Declaration of Marvin Donius filed in
14  related case (Rincon Mushroom Corp. v. Mazzetti, et al.); (e) Letter
15  dated October 19, 2008 from US EPA to Marvin Donius; and (f) May 13,
16  2010 Declaration of Rick Minjares filed in this case.

17          D.   **Review of Minjares Declaration.**

18      8.  The Minjares declaration sets forth opinions and conclusions
19  (pages 6-12) that this property represents "the likely threat that his-
20  toric and present land use activities on the Subject Property to soil,
21  water and other natural resources on the Reservation" (lines 18 and 19,
22  page 6).  Mr. Minjares also asserts that "contamination spilled on the
23  subject property would ... 2) drain into underground injection wells on
24  the property that are likely discharging to surrounding soils ..." (lines
25  6-9, page 7).  Mr. Minjares appears to be attempting to "make the case"
26  that this property "is" contaminating the local groundwater system and
27  allegedly detrimentally impacting the Rincon Tribe drinking water supply
28  system.  There does not appear to be any separation in the Minjares'

3

declaration between what "could be" and what "is" occurring on the
property.  Indeed, no evidence is offered in the Minjares declaration
supportive of the existence of any actual or threatened water
contamination emanating from this property.  It is true, as the Minjares
declaration points out, contaminated material was created as a result of
the October 2007 Poomacha wildfire, but all of this material was fully
removed from the site by August 2008.

**V.    Technical Facts Regarding the Potential
of Groundwater Contamination on the
Subject Property.**

9.  It is clear that most of the structures on this property were
completely destroyed during the October 2007 wildfire event; significant
and substantial damage occurred with respect to all on-site facilities.
Following this wildfire event, the US EPA Emergency Response Section was
activated, and the EPA's Team 9 Superfund Technical Assessment and
Response Team prepared, conducted and completed an assessment and
cleanup plan for the property.  This work included an exhaustive site
assessment, with extensive water quality sampling, sampling of fly ash,
and clean up of the site.  The EPA report documented that "all water
samples results were found to be negative or below US EPA maximum
contaminant levels for all investigated analytes" (page 5).  The
assessment did identify fly ash with levels of certain elements above
recommended standards, but as a result of and following this work, the
site was completely cleaned up, and some 67 tons of contaminated ash,
soil, and debris were eventually removed from the site (page 10).  The
EPA report concludes on page 12 that the "TPH and metals contaminated
ash and soil were successfully removed from the site on August 22,
2008".  No clean up as to groundwater was required, since no samples
collected by registered professionals under EPA supervision showed any

6

Jan-07-10 12:22pm   From-GEORGE MCGILL                Peterson Environme.    Services  #0745 P.006 '006
                                                                            T-887  P.06/07  F-853

1  groundwater contamination at all.

2                        F.    Findings.

3          10.  None of the documents that I have reviewed showed any evidence

4   of actual or threatened groundwater contamination.  As noted above, the

5   US EPA did not document any elements above maximum contaminant levels as

6   to any and all investigated analytes.  The Minjares declaration does not

7   provide any evidence to support a claim that any condition on the site

8   is causing groundwater contamination, by reason of infiltration into the

9   underlying aquifer or otherwise.  It is true that two underground septic

10  systems exist on this property.  However, both of these systems were

11  opened up on August 18, 2008 (see Donius declaration, page 7).  This

12  work was directly supervised by the EPA.  Underground septic systems do

13  discharge "treated" waste water to the groundwater system, but this is

14  the standard level of care for wastewater flows, and this type of system

15  is utilized with respect to discharge of all domestic waste water within

16  the County and regions outside municipal waste water systems.  Under-

17  ground disposal systems such as those in place on this property consti-

18  tute the accepted standard of care in San Diego County.

19         11.  The Minjares declaration refers to "underground injection

20  wells on the property" (see line 4, page 7).  In my document review and

21  personal on-site inspection and investigation, I could not identify any

22  such facilities on this property.  Yesterday I questioned the property

23  owner, Marvin Donius, as to whether any injection wells had been present

24  on the property, and he confirmed my impression from my previous in-

25  vestigation that no injection wells had been in place or currently exist

26  on the property.  The only facility that could be identified as being

27  related to an injection well is the onsite sump, but this is a closed

28  sump without an outlet (see page 4, September 4, 2008 US EPA letter).

                                          5

1  Mr. Benius confirmed to me that this closed sump had been used to store

2  surface storm water that was later used for landscape irrigation.  No

3  injection wells have been or are now on this property.

4       12.  The Minjares declaration also refers a number of times to "the

5  unconfined nature of the aquifer" (pages 6 and 7).  I would agree that

6  the aquifer underlying the project is "unconfined" as defined by profes-

7  sional hydrogeological standards (see Groundwater, Freeze and Cherry,

8  1979, page 48).  However, it is important to note that basically all

9  alluvial aquifers within the central sections of San Diego County are

10  unconfined.  This is the norm for the County.  Specifically, the entire

11  San Luis Rey alluvial aquifer system is unconfined.  As such, there is

12  nothing unusual or unique in the fact that the aquifer underlying this

13  property is "unconfined".

                    C.   Conclusion.

14

15       13.  The examined record is devoid of any evidence evincing or in-

16  dicating any groundwater contamination, actual or threatened, that could

17  have any deleterious effect upon the Rincon Tribe's drinking water sup-

18  ply or otherwise injure any tribal member on the Rincon Reservation.

19       I declare under penalty of perjury that the foregoing is true and

20  correct.

21       Executed at La Jolla, California, this 7th day of June, 2010.

22

                                        JOHN PETERSON

23

24

25

26

27

28

                                6

**EXHIBIT "C"**

## Automotive Specialists Towing

### 33777 Valley Center Road

### Valley Center, CA  92082

### (760) 749- 2501

September 29, 2010

Attorney George McGill:

My name is Robert Moreno.  I am the owner of Automotive Specialists Towing, located at 33777 Valley Center Road.  My company provides towing service and storage space for authorities such as CHP and the SD Sheriff's Department.  We also provide removal and disposal service for abandoned cars in our community.  We provide emergency road service for Auto Club of Southern California (AAA) and various other motor clubs.

On September 29, approximately 8:30 am, I approached my place of business and was confronted by the Rincon Tribal Police and was informed that they had a Federal Court order restricting ingress and egress from the property.  They also informed me that I was allowed to remove vehicles from the property but was not allowed to bring any in for storage.  This will immediately end my contract with CHP and SD Sheriff's if I do not have a storage area.  This storage area is designed with security fencing, barbed wire along with a night watchman on the premises.  Our dispatching and office management is located within this secured area.

I have not received any formal notice that our operation was in jeopardy.  The consequences of this action taken by the Rincon Tribe will cause my business to shut down; a major loss in income and staff will be laid off.  This will also cause a deficiency in the area of respond time to accident scenes in the surrounding area.  With the heavy traffic from four casinos, it is imperative that my tow company is readily available to respond within the contracted time of 20 minutes.

I find it difficult to comprehend why such an essential service I provide would be a hindrance to the community.  Every precaution is taken to maintain a good image, in a safe environment, for my staff and the community.

Sincerely,

Robert Moreno/Owner

**EXHIBIT "D"**

Defendant Copy

443491

**San Diego County Sheriff's Department**

## NOTICE TO APPEAR ☐ Traffic ☐ Nontraffic ☐ Misdemeanor

| Date of Violation 10/30/10 | Time 1135 | ☑ AM ☐ PM | Day of Week S M T W T F S | Case Number |
|---|---|---|---|---|

| Name (First, Middle, Last) Steven Anthony Rosenthal |
|---|

| Address 33777 Valley Center Rd |
|---|

| City Valley Center | State CA | ZIP Code 92082 |
|---|---|---|

| Driver's License Number N5045072 | State CA AM | Class AM | Commercial Lic. ☑ Yes ☐ No | Birth Date 8-5-57 | Age 53 |
|---|---|---|---|---|---|

| Sex M | Hair Brn | Eyes Haz | Height 6-0 | Weight 199 | Race W | ☐ Commercial Veh. (VC 15210(b)) |
|---|---|---|---|---|---|---|

| Vehicle License Number / VIN | | | | State | ☐ Hazardous Material (VC353) |
|---|---|---|---|---|---|

| Year | Make | Model | Body Style | Color |
|---|---|---|---|---|

| Registered Owner or Lessee | ☐ Same as Driver |
|---|---|

| Address | ☐ Same as Driver |
|---|---|

| City | State | Zip Code | ☐ Evidence of Financial Responsibility |
|---|---|---|---|

| | Yes | No | Violation Code and Section | Description | Misdemeanor or Infraction (Circle) |
|---|---|---|---|---|---|
| Correctable Violation (VC 40610(b)) | ☐ | ☑ | PC 148 (a)(1) | | (M) I |
| | ☐ | ☐ | Delay / Resist | | M I |
| | ☐ | ☐ | Peace Officer | | M I |
| | ☐ | ☐ | | | M I |

☐ Booking Required (see reverse)

| Speed Approx. | P.F. Max. | Veh. Lmt. | Safe Spd. | Radar | Beat 804 | ☐ Continuation Form Issued |
|---|---|---|---|---|---|---|

| Location of Violation(s) 33777 Valley Center Rd | City of Occurrence Valley Center | ☐ Unincorp. |
|---|---|---|

| Weather Conditions Clear | Road Conditions Dry | Traffic Conditions Light | Station/Sub-Stn. SW72 | Division FAI |
|---|---|---|---|---|

☐ Violations not committed in my presence, declared on information and belief.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| Date 10/30/10 | _____ J.D. Martin _____ | I.D. Number 1500 |
|---|---|---|
| | Arresting or Issuing Deputy | |

| Name of Arresting Deputy, if different from Issuing Deputy | I.D. Number |
|---|---|

**WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE PLACE AND TIME INDICATED BELOW**

X Signature _____

Superior Court of San Diego County - ☑ FOLLOW THE INSTRUCTIONS ON THE REVERSE

| ☑ | North Division - Criminal | 325 South Melrose, Vista, CA 92081 | (760) 201-8600 |
|---|---|---|---|
| ☐ | North Division - Traffic | 325 S. Melrose, Ste 350, Annex Bldg, Vista, CA 92081 | (760) 201-8500 |
| ☐ | East Division | 250 East Main Street, El Cajon, CA 92020 | (619)-456-4100 |
| ☐ | East Division - Branch | 1428 Montecito Road, Ramona, CA 92065 | (760) 738-2435 |
| ☐ | Central Division - Criminal | 220 West Broadway, San Diego, CA 92101 | (619) 450-5700 |
| ☐ | Central Division - Traffic | 8950 Clairemont Mesa Blvd., San Diego, CA 92123 | (858) 634-1800 |
| ☐ | Juvenile Division | 2901 Meadowlark Drive, San Diego, CA 92123 | (858) 634-1616 |
| ☐ | South Division | 500 Third Avenue, Chula Vista, CA 92010 | (619) 746-6200 |

| DATE 1/6/2011 | TIME 0730 | ☐ AM ☑ PM | ☐ To be notified | ☐ You may arrange with the clerk to appear at a night session of the court |
|---|---|---|---|---|

SO-99 REV 09/05   Judicial Council of California Form Rev. 05-20-05 (Veh. Code § 40500(b), 40513(b), 40522, 40600; PC § 853.9) TR-130

**EXHIBIT "E"**

# RINCON BAND OF LUISEÑO INDIANS
## CIVIL CITATION



RTL 000057

Today's date: 11 13 2010   Issuing Officers name (print name): Jack W Musick   Signature: _____

| Personal Information | | | | | Rincon - 1 |
|---|---|---|---|---|---|

Person's last name: ROGERS   First: Steven   Middle: _____   Reservation Resident? ☑ Yes ☐ No   Tribal status (check one): ☐ Rincon member  ☑ Non-member

Mushroom factory. Roofer

Legal name? ☐ yes ☐ no   If not, legal name: _____   (former name): _____   Birth date: _____   Age: _____   Sex: ☑ M ☐ F

Street address: 33777 Valley Center Rd.   Driver's license no.: _____   State: _____   Home phone no ( )

P.O. Box: _____   City: Valley Center   State: CALIF.   ZIP code: 92082

Occupation: Unknown H   Employer: _____   Employer phone no. ( )

Height: 6   Weight: 180   Hair color: Grey   Eye color: _____   Distinguishing marks/Tattoos: na known

### Information Regarding Violation

Peace and Security Code section(s) violated: Section 16.0. Sign Ordinance. part A

Amount of fine: 500⁰⁰   Date of Violation: 11 13 2010

| | | Description of vehicle | | | |
|---|---|---|---|---|---|
| License # / VIN | | | | | |
| Year | Make | Model | Color | Type | |

Location of violation (address or property description): 33777 Valley Center Rd

Description of violation: Steve Rogers. posted. Illegal Sign on Said property of Mushroom factory. Violated. Sign Ordinance. part (A) See Attached. Document. with pictures.

### Acknowledgement of Personal Service

I acknowledge that a copy of this completed citation form was provided to me by a Tribal Law Enforcement Officer. My signature is not an acknowledgement of guilt, but a promise to respond to this notice. A civil infraction is a non-criminal offense for which imprisonment is not an available sanction.   * The fine amount may increase if prior citations were issued for the same offense

Signature: _____   Date: / /   Court Date: 12 21 2010

### NOTICE OF PAYMENT DUE, RIGHT TO REVIEW AND HEARING REQUEST FORM LOCATED ON BACK OF CITATION

### FOR TRIBAL COURT USE ONLY

Date received: / /   Hearing date: 12 21 2010   Date notice of hearing sent: / /   Extension to: / /

White - Court Copy   Yellow - Defendant Copy   Pink - Officer's Copy

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

STEVEN ROGERS-DIAL; SUZANNE ROGERS-DIAL; and AUTOMOTIVE SPECIALISTS, LLC

## DEFENDANTS

RINCON BAND OF SAN LUISEÑO INDIANS; and DOES 1-25;

**(b)** County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Newell E. Cumming, Esq.    (760) 747-6600
145 South Fig Street, Suite L, Escondido, CA 92025

Attorney's
Karen Graham, Esq.

'10 CV 2656    W    RBB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Sec. 1983 and 1985 (3)

Brief description of cause:
Federal civil rights protection

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE Hayes    DOCKET NUMBER 10cv591-WQH-POR

DATE
12/21/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 21555    AMOUNT 350.00    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

NS 12/23/10

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS021555
Cashier ID: msweaney
Transaction Date: 12/23/2010
Payer Name: LO OF NEWELL E CUMMING
----------------------------------
CIVIL FILING FEE
 For: ROGERS-DIAL V RINCON BAND
 Case/Party: D-CAS-3-10-CV-002656-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 5655
 Amt Tendered:  $350.00
----------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00


There will be a fee of $45.00
charged for any returned check.
```