1
2
3
4
5

6              **UNITED STATES DISTRICT COURT**

7            **SOUTHERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| 9  STEVEN ROGERS-DIAL, an individual; | CASE NO. 10cv2656-WQH-POR |
| SUZANNE ROGERS-DIAL, an | |
| 10 individual; and AUTOMOTIVE | ORDER |
| SPECIALISTS, LLC, a California limited | |
| 11 liability company, | |
| 12                              Plaintiffs, | |
|              vs. | |
| 13 RINCON BAND OF LUISENO | |
| INDIANS; BO MAZZETTI; | |
| 14 STEPHANIE SPENCER; CHARLES | |
| KOLB; STEVE STALLINGS; KENNY | |
| 15 KOLB; and DOES 6-25, | |
| 16                              Defendants. | |

17   HAYES, Judge:

18        The matters before the Court are the Motion to Dismiss the First Amended Complaint

19   filed by Defendants (ECF No. 25), and the Motion for Preliminary Injunction filed by Plaintiffs

20   (ECF No. 18).

21   **I.     Background**

22        On December 23, 2010, Plaintiffs initiated this action by filing a Complaint. (ECF No.

23   1).

24        On February 7, 2011, Plaintiffs filed the First Amended Complaint. (ECF No. 11).

25        **A.     Allegations of the First Amended Complaint**

26        Plaintiffs Steven Rogers-Dial and Suzanne Rogers-Dial "reside in their home on

27   non-tribal-owned land, located at 33777 Valley Center Road, Valley Center, California," and

28   "maintain and operate business on this Property, known as S & S Dump Truck Service, Inc."

1    *Id.* ¶ 5.  Plaintiff Automotive Specialists, LLC is a California limited liability company "doing

2    business on non-tribal-owned land located at 33777 Valley Center Road, Valley Center,

3    California."  *Id.* ¶ 6.  "Plaintiffs are each tenants residing in and/or doing business on the

4    Property ... pursuant to rental agreements with Marvin Donius ..., the Plaintiffs' landlord, who

5    is ... the owner in fee-simple of the Property."  *Id.* ¶ 7.

6         "Defendant Rincon Band of Luiseno Indians ... is a 'sovereign nation' recognized as

7    such by the United States Congress and under other applicable federal legislative and

8    adjudicative law." *Id.* ¶ 8.  The remaining Defendants are tribal council members of Defendant

9    Rincon.  "Defendants have placed concrete barriers in front of the Rogers-Dial residence to

10    block these Plaintiffs from driving their vehicles in and out of their Property."  *Id.* ¶ 15.

11    "Defendants have been, and continue to, engage in an unlawful effort to force Plaintiffs off the

12    Property, notwithstanding their lawful and binding leases with Donius....  Defendants have

13    acquired the purported jurisdiction of The Intertribal Court of Southern California–Rincon

14    Band of Luiseno Indians ..., and has caused a Preliminary Injunction ... to be issued by that

15    Tribal Court." *Id.* ¶ 17.  "To acquire its Injunction, Defendants asserted false allegations

16    relating to claim of a supposed environmental hazard."  *Id.* ¶ 20.  "[T]he Plaintiffs have not

17    been parties in any previous judicial action relating to the dispute...." *Id.* ¶ 27.

18         "Plaintiffs contend that any prospective or future actual or attempted enforcement

19    against Plaintiffs by Defendants should be found, declared and adjudged facially

20    unconstitutional, unconstitutional as applied, and/or illegal pursuant to applicable provisions

21    of federal and California law." *Id.* ¶ 46.  "Plaintiffs further contend that the Defendants do not

22    presently have, nor will they in the future have, as a matter of law, any regulatory or

23    adjudicatory authority as to these Plaintiffs and their leasehold interests in the Property." *Id.*

24    ¶ 47.

25         The First Amended Complaint alleges two causes of action.  The first cause of action

26    seeks declaratory relief and the second cause of action seeks preliminary and permanent

27    injunctive relief.  Plaintiffs seek an "injunction requiring and ordering Defendants to desist and

28    refrain from any further actual or attempted enforcement, prospectively and in the future, of

any and all purported regulatory or adjudicative authority over these Plaintiffs and their leasehold interests...."  *Id.*  Plaintiffs seek "a declaration that the Defendants are not constitutionally or legally entitled to exercise regulatory or adjudicative authority or jurisdiction."  (ECF No. 11-1 at 9).

### B.    Motion for Preliminary Injunction

On March 17, 2011, Plaintiffs filed the Motion for Preliminary Injunction in this Court. (ECF No. 18).  Plaintiffs contend that "unless this Court issues a preliminary injunction preventing Defendants or permanent injunction requiring and ordering Defendants to desist and refrain from any further actual or attempted enforcement, prospectively and in the future, of any and all purported regulatory or adjudicative authority over these Plaintiffs and their leasehold interests, these Plaintiffs will suffer serious and irreparable injury and other damages that are no compensable in money damages or by monetary relief of any nature."  (ECF No. 18-1 at 6).

On April 4, 2011, Defendants filed an opposition to the Motion for Preliminary Injunction.  (ECF No. 19).  Defendants contend:

> Because they cannot assert a right independent from the landowners, current Plaintiffs cannot establish standing to challenge the Tribe's governmental authority, and their motion should be denied.  Alternatively, the Motion should be denied because Plaintiffs cannot establish the requisite likelihood of success on the merits of their claims, which distill down to identical claims previously disposed of by this Court in *RMCA v. Mazzetti* and *Donius v. Mazzetti*.  (See, 09cv2330 and 10cv0591, respectively).  Consistent with this Court's rulings in those cases, Plaintiffs first must exhaust their tribal remedies before seeking Federal Court review of their broad challenges to the Tribe's jurisdiction.

*Id.* at 15.  Defendants contend that "[t]he public interest in having sanitary drinking water and fire safety clearly outweighs Plaintiffs' alleged private right to engage in land use activities that

threaten those core interests."  *Id.* at 21.

On April 18, 2011, Defendants filed a supplement to their opposition to the Motion for Preliminary Injunction.  (ECF No. 23).  Defendants submitted a declaration from Randy Durham and other evidence which Defendants contend "demonstrates that Mr. Donius (Plaintiffs' 'alleged' landlord) does not own the Home where the Plaintiffs reside....  The

Durham Declaration reveals that Plaintiffs Rogers-Dials have no legal right to reside in the Home located on the Subject Property and consequently have no standing to litigate claims regarding whether the Tribe has the authority to regulate their residential land use activities." *Id.* at 2.  Defendants contend Durham's company, Metro Housing Development, own the title to the manufactured home in which Plaintiffs reside.

On April 29, 2011, Plaintiff submitted a response to Defendants' supplemental opposition to the Motion for Preliminary Injunction.  (ECF No. 29).  Plaintiffs contend that the supplemental evidence is "irrelevant and inadmissible" and "of no significance to this lawsuit." *Id.* at 6.  Plaintiffs contend that "[a]lthough there may be a dispute between Donius and Durham, ... the issues are unrelated to the Plaintiffs' lawsuit against Defendants, and clearly are unrelated to the fundamental legal disagreement between the parties, which relates to the Defendants' attempts to control, and ultimately acquire, Donius' property." *Id.*

### C.    Motion to Dismiss

On April 26, 2011, Defendants filed the Motion to Dismiss.  (ECF No. 25).  Defendants contend that the First Amended Complaint should be dismissed because (1) "Plaintiffs lack standing"; (2) "the Tribe's sovereign immunity acts as a complete subject matter jurisdictional bar to all claims raised in the [First Amended] Complaint"; and (3) "Plaintiffs have failed to exhaust available tribal remedies before bringing this suit." *Id*. at 2.  With respect to Defendants' third contention, Defendants contend:

> [T]he ... actual controversy has been litigated and adjudicated by this Court in *RMCA v. Mazzetti et al.*, (09cv2330) and *Donius v. Mazzetti et al*, (10cv059l) (the 'Related Cases').... The *only* material difference between this case and the Related Cases is the substitution of the current Plaintiffs for their landlord. Given the basis for this Court's ruling in the Related Cases, the substitution of current Plaintiffs does nothing to affect this Court's previous determination of colorable tribal jurisdiction.

(ECF No. 25-2 at 3).

On May 18, 2011, Plaintiffs filed an opposition to the Motion to Dismiss.  (ECF No. 30).  Plaintiffs contend that "Defendants do not have authority to subject the Plaintiffs to the jurisdiction of the Rincon Tribal [Court]," and "any prospective or future actual or attempted enforcement against Plaintiffs should be found, declared and adjudged facially

unconstitutional, unconstitutional as applied, and/or illegal pursuant to applicable provisions of federal and California law." (ECF No. 30-2 at 8). Plaintiffs contend that Defendants' "assertion of tribal court jurisdiction is conducted in bad faith." *Id.* at 4. Plaintiffs contend that "[n]o better example of Rincon's true intentions exists than the example provided by Rincon's efforts to cause the prospective purchase by a third party of the subject Property to fall through because of interference from the Defendants." *Id.* at 4-5.

### D.   *Rincon Mushroom Corporation* and *Donius* Cases

Two cases previously filed in this Court related to the same real property and the same or similar actions by Rincon and its tribal council members. In *Rincon Mushroom Corporation of America v. Mazzetti*, S.D. Cal. Case No. 09cv2330 ("*RMCA* action"), and *Donius v. Mazzetti*, S.D. Cal. Case No. 10cv591 ("*Donius* action"), the owners of the real property located at 33777 Valley Center Road, Valley Center, California, which is within the boundary of the Rincon Tribal Reservation but is non-Indian fee land, filed suit against Rincon tribal members seeking declaratory, injunctive and monetary relief. The plaintiffs in these actions requested that the Court "declare and adjudge that neither the Rincon Tribe nor the above-named Tribal defendants presently have, nor in the future could as a matter of law have, any regulatory or adjudicative authority of any nature whatever over or as to plaintiff and/or over or as to subject property." (Case No. 09cv2330, ECF No. 1 ¶ 23(d); *see also* Case No. 10cv591, ECF No. 1 ¶ 23(d)). The plaintiffs sought the issuance of "a permanent injunction requiring and ordering that the above-named Tribal defendants desist and refrain from any further actual or attempted enforcement, prospectively and in the future, of any and all purported Rincon Tribe regulatory or adjudicative authority over or as to plaintiff and/or over or as to subject property." (Case No. 09cv2330, ECF No. 1 ¶ 29; *see also* Case No. 10cv591, ECF No. 1 ¶ 29).

On September 21, 2010, the Court issued Orders in each case granting Defendants' motions to dismiss for failure to exhaust tribal remedies. (Case No. 09cv2330, ECF No. 54; Case No. 10cv591, ECF No. 20).

The plaintiff in each case filed a notice of appeal of the Court's Order dismissing the

action for failure to exhaust tribal remedies.  The appeal in the *Donius* action has been dismissed and the appeal in the *RMCA* action remains pending.

**II.    Discussion**

Defendants raise three contentions in support of their pending Motion to Dismiss the First Amended Complaint: (a) Plaintiffs lack standing; (b) the Tribe's sovereign immunity acts as a complete subject matter jurisdictional bar to all claims; and (c) Plaintiffs have failed to exhaust available tribal remedies.

**A.    Standing**

Article III standing is a jurisdictional prerequisite which must be met before a federal court may adjudicate a case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "To bring suit in federal court, a plaintiff must establish three constitutional elements of standing.  First, the plaintiff must have suffered an injury in fact, the violation of a protected interest that is (a) concrete and particularized, and (b) actual or imminent.  Second, the plaintiff must establish a causal connection between the injury and the defendant's conduct.  Third, the plaintiff must show a likelihood that the injury will be redressed by a favorable decision." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (quotations omitted).  A challenge to subject matter jurisdiction may be facial or factual.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The Court finds that Defendants' Motion to Dismiss presents a facial attack on Plaintiff's standing.

Plaintiffs allege that they have entered into "lawful and binding leases with Donius," the owner of the property at issue.  (ECF No. 11-1 ¶ 17).  Plaintiffs allege that, because Defendants placed concrete barriers in front of the property, "the Rogers-Dial family will be forced out of [their] home and business, and the vehicle impound business of Automotive Specialists will not survive."  (ECF No. 11-1 ¶ 32).  Plaintiffs seek an "injunction requiring

1   and ordering Defendants to desist and refrain from any further actual or attempted

2   enforcement, prospectively and in the future, of any and all purported regulatory or

3   adjudicative authority over these Plaintiffs and their leasehold interests...." Id. ¶ 47. After

4   review of the First Amended Complaint and the submissions of the parties, the Court finds that

5   the allegations of the First Amended Complaint sufficiently allege Plaintiffs have standing to

6   bring suit in federal court.

7           **B.      Sovereign Immunity**

8           "Absent congressional abrogation or explicit waiver, sovereign immunity bars suit

9   against an Indian tribe in federal court. This immunity protects tribal officials acting within

10  the scope of their valid authority." *Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509

11  F.3d 1085, 1091 (9th Cir. 2007) (citations omitted). "Under the doctrine of *Ex Parte Young*,

12  immunity does not extend to officials acting pursuant to an allegedly unconstitutional statute....

13  In determining whether *Ex Parte Young* is applicable to overcome the tribal officials' claim

14  of immunity, the relevant inquiry is only whether [the plaintiff] has alleged an ongoing

15  violation of federal law and seeks prospective relief." *Id*. at 1092 (citations omitted).

16          Plaintiffs have adequately alleged that, "by attempting to assert jurisdiction over these

17  non-Indians who occupy non-tribal-owned land, Defendants are engaged in conduct that is in

18  violation of federal law, including the civil rights protections that Plaintiffs are entitled to

19  under 42 U.S.C. §§ 1983 and 1985." (ECF No. 11-1 ¶ 31). The First Amended Complaint

20  seeks prospective relief. Accordingly, the motion to dismiss the individual Defendants on the

21  basis of sovereign immunity is denied. *See Vaughn*, 509 F.3d at 1092. The motion to dismiss

22  the Rincon tribe on the basis of sovereign immunity is granted. *See, e.g.*, *Kiowa Tribe of Okla.*

23  *v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998) ("As a matter of federal law, an Indian tribe is

24  subject to suit only where Congress has authorized the suit or the tribe has waived its

25  immunity.").

26          **C.      Exhaustion of Tribal Remedies**

27                   **1.      *Montana*'s Second Exception**

28          Tribal governments have been divested of sovereignty over "relations between an

1   Indian tribe and nonmembers of the tribe." *Montana v. United States*, 450 U.S. 544, 564

2   (1981) (quotation omitted).  Tribal governments have no jurisdiction over non-members

3   "beyond what is necessary to protect tribal self-government or to control internal relations."

4   *Id.*  Tribes have some authority to regulate nonmembers on tribal lands, but as a general rule,

5   tribes may not regulate nonmembers on non-Indian land within the boundaries of the

6   reservation. *See id.* at 564-65.  There are two exceptions to that general rule; only the second

7   exception is at issue in this case: "a tribe may exercise 'civil authority over the conduct of

8   non-Indians on fee lands within the reservation when that conduct threatens or has some direct

9   effect on the political integrity, the economic security, or the health or welfare of the tribe.'"

10  *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S. Ct. 2709, 2720 (2008)

11  (quoting *Montana*, 450 U.S. at 565).  This exception is "limited," and "cannot be construed in

12  a manner that would swallow the rule or severely shrink it."  *Id.* (quotations omitted).  The

13  conduct at issue "must do more than injure the tribe, it must imperil the subsistence of the

14  tribal community."  *Id.* at 2726 (quotation omitted).  "The burden rests on the tribe to establish

15  one of the exceptions to *Montana*'s general rule that would allow an extension of tribal

16  authority to regulate nonmembers on non-Indian fee land."  *Id.* at 2720.

### 2.   Exhaustion Principles

18  There is a general rule that if a non-Indian defendant is haled into a tribal court and

19  asserts that the tribal court lacks jurisdiction, the defendant must exhaust tribal remedies before

20  seeking to enjoin the tribal proceeding in federal court.  *See Nat'l Farmers Union Ins. Co. v.*

21  *Crow Tribe of Indians*, 471 U.S. 845, 856 (1985).  Even when there is no pending proceeding

22  in tribal court, a nonmember plaintiff may not sue in federal court asserting that the tribe lacks

23  regulatory authority over nonmember actions taken on non-Indian land within a reservation

24  without exhausting tribal court remedies.  *See Burlington N. v. Crow Tribal Council*, 940 F.3d

25  1239, 1246 (9th Cir. 1991); *see also Sharber*, 343 F.3d at 976 ("The absence of any ongoing

26  litigation over the same matter in tribal courts does not defeat the tribal exhaustion

27  requirement.").  "Exhaustion is prudential; it is required as a matter of comity, not as a

28  jurisdictional prerequisite."  *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004).

1    There are four exceptions to the exhaustion rule: "(1) when an assertion of tribal court

2    jurisdiction is 'motivated by a desire to harass or is conducted in bad faith'; (2) when the tribal

3    court action is 'patently violative of express jurisdictional prohibitions'; (3) when 'exhaustion

4    would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's

5    jurisdiction'; and (4) when it is 'plain' that tribal court jurisdiction is lacking, so that the

6    exhaustion requirement 'would serve no purpose other than delay.'" *Elliott v. White Mountain*

7    *Apache Tribal Court*, 566 F.3d 842, 847 (9th Cir. 2009) (quoting *Nevada v. Hicks*, 533 U.S.

8    353, 369 (2001)).  Plaintiffs contend that the first and fourth exceptions apply in this case.

9                          **3.    Harassment or Bad Faith Exception**

10    Although Plaintiffs allege that Defendants' assertion of tribal court jurisdiction is

11    motivated by a desire to harass or is conducted in bad faith, *see* ECF No. 11 ¶¶ 17, 24, 26, the

12    evidence in the record is not sufficient to "prove[] that enforcement of the statutory scheme

13    was the product of bad faith conduct or was perpetuated with a motive to harass." *A & A*

14    *Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1417 (9th Cir. 1986) ("This

15    exception to the exhaustion requirement ... may not be utilized unless it is alleged and proved

16    that enforcement of the statutory scheme was the product of bad faith conduct or was

17    perpetuated with a motive to harass.  No such proof appears in the record."); *see also Elliott*,

18    566 F.3d at 847 (exception inapplicable because "there is no evidence of bad faith or

19    harassment in the record").  The Court finds that Plaintiffs have failed to show that the

20    harassment or bad faith exception to the exhaustion requirement applies in this case.

21                          **4.    "No Purpose Other Than Delay" Exception**

22    Exhaustion is not required "'[w]hen ... it is plain that no federal grant provides for tribal

23    governance of nonmembers' conduct on land covered by *Montana*'s main rule,' so the

24    exhaustion requirement 'would serve no purpose other than delay.'" *Hicks*, 533 U.S. at 369

25    (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 459-60, n.14 (1997)).  When determining

26    "whether it is plain that the tribal court lacks jurisdiction," a court considers whether

27    "jurisdiction is colorable or plausible." *Elliott*, 566 F.3d at 848 ("If jurisdiction is colorable

28    or plausible, then the exception does not apply and exhaustion of tribal court remedies is

1  required.") (quotations omitted).

2      The Court of Appeals for the Ninth Circuit has held that "threats to water rights may

3  invoke inherent tribal authority over non-Indians" pursuant to *Montana*'s second exception.

4  *Montana v. U.S. Envtl. Prot. Agency*, 137 F.3d 1135, 1141 (9th Cir. 1998) ("*Montana II*"). "A

5  tribe retains the inherent power to exercise civil authority over the conduct of non-Indians on

6  fee lands within its reservation when that conduct threatens or has some direct effect on the

7  health and welfare of the tribe.  This includes conduct that involves the tribe's water rights."

8  *Id.* (quotation omitted).  Similarly, tribes have a "strong interest" in "prevention of forest fires,

9  and preservation of its natural resources" which could plausibly support tribal court

10  jurisdiction pursuant to *Montana*'s second exception.  *Elliott*, 566 F.3d at 850.

11      Defendants have submitted evidence indicating that conduct on the property at issue

12  "pose[s] direct threats to the Tribe's groundwater resources."  (Minjares Decl. ¶ 29, ECF No.

13  26-5).  Defendants also have submitted evidence that "[c]onditions on the Subject Property

14  during the [2007] Poomacha Fire contributed to the spread of wildfire from that property to

15  Tribal lands across the street on which the Casino is located."  (Mazzetti Decl. ¶ 15, ECF No.

16  26-3).  Although Plaintiffs dispute this evidence, Defendants have shown that conduct on the

17  property at issue plausibly could threaten the Tribe's groundwater resources and could

18  contribute to the spread of wildfires on the reservation.  This showing is sufficient to require

19  exhaustion, given the breadth of the relief requested by the First Amended Complaint.

20      In the First Amended Complaint, Plaintiffs seek an "injunction requiring and ordering

21  Defendants to desist and refrain from any further actual or attempted enforcement,

22  prospectively and in the future, of any and all purported regulatory or adjudicative authority

23  over these Plaintiffs and their leasehold interests...."  (ECF No. 11 ¶47).  Plaintiffs also seek

24  "a declaration that the Defendants are not constitutionally or legally entitled to exercise

25  regulatory or adjudicative authority or jurisdiction."  (ECF No. 11-1 at 9).  The declaratory and

26  injunctive relief requested make no exception for "conduct [that] threatens or has some direct

27  effect on the political integrity, the economic security, or the health or welfare of the tribe."

28  *Montana*, 450 U.S. at 565.  In order for Plaintiffs to obtain the full relief they request, the

Court would be required to find that there could be no tribal jurisdiction, even if future conduct on the property at issue "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.*

Given the breadth of the declaratory and injunctive relief requested by Plaintiffs, there is a "colorable or plausible" claim to tribal regulatory and tribal court jurisdiction pursuant to *Montana*'s second exception. *Elliott*, 566 F.3d at 848; *cf. Montana II*, 137 F.3d at 1141. Although *Montana*'s second exception should not "be construed in a manner that would swallow the rule or severely shrink it," *Plains Commerce Bank*, 128 S. Ct. at 2720, neither should it be construed in a manner that would eliminate the exception entirely. Because tribal court jurisdiction is plausible, "principles of comity require [federal courts] to give the tribal courts a full opportunity to determine their own jurisdiction in the first instance." *Elliott*, 566 F.3d at 850-51. The Court concludes that Plaintiffs must exhaust tribal remedies prior to asserting their claims in this Court.

### 5.    Dismiss or Stay

The Court has the discretion to dismiss or stay this action while Plaintiffs exhaust their tribal court remedies. *See Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948 (9th Cir. 2008) ("As a matter of discretion, a district court may either dismiss a case or stay the action while a tribal court handles the matter.") (citation omitted). Plaintiffs have not asserted that the statute of limitations would bar Plaintiffs from asserting their claims in a later-filed action post-exhaustion. *Cf. Sharber*, 343 F.3d at 976 ("[D]ismissal might mean that [plaintiff] would later be barred permanently from asserting his claims in the federal forum by the running of the applicable statute of limitations. Under the circumstances, the district court should have stayed, not dismissed, the federal action pending the exhaustion of tribal remedies."). Defendants' attempts to assert regulatory jurisdiction over the property at issue are alleged to be ongoing, and Plaintiffs request only prospective relief in the First Amended Complaint.

In an affidavit, Plaintiff Steven Rogers-Dial stated that, on September 28, 2010, he was served with a preliminary injunction issued by the Intertribal Court of Southern California,

Rincon Band of Luiseno Indians, Case No. RINCON-02972009.  (Steven Rogers-Dial Decl. ¶ 6, ECF No. 18-3).  The fact that there is a pending proceeding in Tribal Court weighs in favor of dismissal of this action.  *See Atwood*, 513 F.3d at 948 ("Because the parties do not dispute that the ... issue is still pending before the Tribal Court, the district court properly exercised its discretion and dismissed this case due to Plaintiff's failure to exhaust tribal court remedies.").

The Court concludes that the action against the individual Defendants should be dismissed due to Plaintiff's failure to exhaust tribal remedies.

**IV.     Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss Defendant Rincon Band of Luiseno Indians on the basis of sovereign immunity is GRANTED, and the Motion to Dismiss the remaining Defendants for failure to exhaust tribal remedies is GRANTED.  (ECF No. 25).

Due to the dismissal of this action, the Motion for Preliminary Injunction is DENIED without prejudice.  (ECF No. 18).

The Clerk of the Court shall close this case.

DATED:  July 1, 2011

**WILLIAM Q. HAYES**
United States District Judge